**Affirmed and Majority and Dissenting Opinions filed December 5, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00062-CR

---

**ERICK LIONEL MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 221st District Court
Montgomery County, Texas
Trial Court Cause No. 12-04-04401-CR**

---

## M A J O R I T Y    O P I N I O N

Appellant pleaded guilty to possession with intent to deliver or manufacture a controlled substance. Before his guilty plea, appellant filed a motion to suppress evidence on grounds that the traffic stop was made without reasonable suspicion of criminal activity. The trial court denied appellant's motion to suppress. In two issues, appellant challenges the trial court's ruling; he contends that (1) his Fourth Amendment rights were violated when a police officer stopped his vehicle without

reasonable suspicion of criminal activity[1]; and (2) the police officer was not acting in his community-caretaking capacity when he stopped the vehicle.  We affirm.

## BACKGROUND

Officer Kevin Cooke, who was working with the Montgomery County Precinct 4 Constable's Office at the time, was patrolling U.S. Highway 59 when he observed a vehicle traveling northbound in the center lane of traffic.  He observed the vehicle begin to straddle the divider line between the center lane and the left lane of traffic.  Based upon his training and approximately twenty-one years of law enforcement experience, Cooke "conducted a traffic stop on the vehicle to check the welfare of the driver."  Cooke testified he observed the vehicle fail to maintain a single lane for several hundred feet before stopping the vehicle.  The video taken from Cooke's vehicle camera confirms that the vehicle straddled the lane-marker for several hundred feet.  Because the details of Cooke's testimony are crucial to our determination of the validity of the traffic stop, we cite verbatim the following relevant excerpts:

> [Prosecutor] Q. All right.  Well, just give us an idea — just so the record's clear, why did you stop this vehicle?
>
> [Cooke] A. To check the welfare of the driver.
>
> Q. And why did you need to check the — believe you needed to check the welfare of the driver?
>
> A. Because the driver's operating a motor vehicle in a public roadway with other vehicles on the roadway as well and the vehicle is crossing over the line.  And that could be an indicator of someone falling asleep, intoxicated, overmedicated.
>
> Q. Okay. And have you in the course of your experience often encountered folks that did the same thing that [the driver] did that, in fact, were based on your experience intoxicated, sleepy, overmedicated, drowsy, whatever?

---

[1] It is undisputed this was a warrantless traffic stop.

2

A. Yes.

Q. Unfit to operate a motor vehicle safely on our highways?

A. Yes, sir.

On cross-examination:

Q. Okay. Now, the — the primary reason or, I guess, what you told Mr. Freyer is the reason you pulled this young lady over is for what we call community caretaking. Correct?

A. Yes, sir.

Q. Okay. You wanted to check the welfare of the driver and/or the passengers in the vehicle, correct?

A. The driver. Yes, sir.

Q. Okay. And you want to make sure if they were sleepy or intoxicated or make sure nothing was going wrong in the vehicle.

A. To make sure they were okay to continue on their journey. Yes, sir.

\* \* \*

Q. Okay. And your concern for their safety for — the concern was you wanted to make sure the driver wasn't sleepy. That was one of the reasons, right?

A. Right.

Q. To see if the driver might be intoxicated?

A. Correct.

Q. Or had some other kind of physical ailment that you might want to check on. Correct?

A. Right. Sleepy, intoxicated, overmedicated.

After Cooke stopped the vehicle, the occupants gave conflicting stories about where they had been, how long they had been there, and where they were going. After searching the vehicle, Cooke found approximately eleven ounces of cocaine hidden in the vehicle's spare tire. The driver and two passengers were

3

arrested for possession with intent to deliver.

Appellant, who was one of the passengers, filed a motion to suppress the evidence on the grounds that Cooke did not have reasonable suspicion to stop the vehicle. After a hearing, the trial court denied appellant's motion. On appeal, appellant claims that the initial stop of the vehicle was illegal, and therefore any evidence obtained as a result of the stop should have been suppressed.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, an appellate court applies an abuse of discretion standard and overturns the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness; we apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id*. at 922–23.

The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If the trial court makes no explicit findings of fact, we imply fact findings to support the court's ruling when the evidence supports the implied findings. *Gutierrez*, 221 S.W.3d at 687.[2] We "must uphold the trial court's ruling if it is reasonably supported by the record and

---

[2] This case was transferred to the Fourteenth Court of Appeals from the Ninth Court of Appeals in Beaumont; we apply transferor court's precedents if there is a conflict. Tex. R. App. P. 41.3. As discussed below, there is no conflict between the Fourteenth Court of Appeals and the Ninth Court of Appeals on the dispositive legal issues in this case.

4

is correct under any theory of law applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

## ANALYSIS

Appellant contends in his first issue that the trial court erred in denying his motion to suppress because his rights were violated when police stopped his vehicle without reasonable suspicion of criminal activity. Appellant claims that he has standing to challenge the traffic stop even though he was merely a passenger. A defendant can challenge the validity of the initial stop of a vehicle in which he was a passenger, since his personal liberty and freedom were intruded on by that action. *See Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984).[3] An investigative detention requires a police officer to have a reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). The reasonableness of a temporary detention is determined from a totality of the circumstances. *Woods*, 956 S.W.2d at 38. We determine, using an objective standard, whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). If an officer has a reasonable basis for suspecting a person has committed a traffic offense, then the officer legally may initiate a traffic stop. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). Reasonable suspicion is present if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d

---

[3] Although the State challenged appellant's standing in responding to his motion to suppress, it does not raise this argument on appeal.

5

488, 492 (Tex. Crim. App. 2005). An officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because its legality rests on the totality of the circumstances viewed objectively. *See Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Appellant argues that the initial stop was illegal because Cooke did not offer specific, articulable facts that the driver of the vehicle committed a traffic offense. Section 545.060 of the Texas Transportation Code states in pertinent part that "an operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code § 545.060(a). This statute is violated only when the vehicle's movement is unsafe. *See Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.—Beaumont 2000, no pet.); *Hernandez*, 983 S.W.2d at 871.

Appellant relies on several cases in which reviewing courts have concluded that there is insufficient justification for a traffic stop when there is evidence that the appellant failed to maintain a single lane but no additional testimony that the movement out of a single lane is unsafe. *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd); *Eichler v. State*, 117 S.W.3d 897 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Aviles v. State*, 23 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Erhart v. State*, 9 S.W.3d 929 (Tex. App.—Beaumont 2000, no pet.). In each case, the stop was based solely on observation of an alleged traffic offense; and there was no testimony that the officer suspected any other offense such as driving while intoxicated.

Appellant misplaces his reliance on these cases because they expressly state that (1) the issue of driving while intoxicated was not raised; or (2) there was no evidence that the officers suspected the defendants might be intoxicated. *See*

6

*Fowler*, 266 S.W.3d at 499; *Eichler*, 117 S.W.3d at 900; *Aviles*, 23 S.W.3d at 75; *Ehrhart*, 9 S.W.3d at 930; *Hernandez*, 983 S.W.2d at 870; *see also State v. Cerny*, 28 S.W.3d 796, 799 (Tex. App.—Corpus Christi 2000, no pet.) ("[The officer] did not stop appellee for any other reason than failure to maintain a single lane."). Here, in contrast, Cooke testified that he suspected the driver might be intoxicated, overmedicated, or falling asleep when he observed the driver moving out of her lane.

The circumstances here parallel *Gajewski v. State*, 944 S.W.2d 450, 451 (Tex. App.—Houston [14th Dist.] 1997, no pet.), in which a Houston police officer stopped the defendant after observing his vehicle weaving between lanes of traffic. After the defendant failed a series of field sobriety tests, he was arrested for driving while intoxicated. *See id.* The defendant argued that the stop was illegal because there was no evidence that his behavior affected the safety of other motorists, and therefore did not violate any traffic law. *See id.* at 452. In rejecting the defendant's argument, the court stated:

> [T]here is no requirement that a particular statute is violated in order to give rise to reasonable suspicion. Although not an inherently illegal act, when the officer observed appellant's car weaving between traffic lanes, reasonable suspicion existed to believe appellant was driving the motor vehicle while intoxicated, or that some activity out of the ordinary is or has occurred, so as to justify the temporary stop of defendant's car.

*Id*.

Cooke testified he observed the vehicle move out of its lane for several hundred feet and testified that crossing the center line "could be an indicator of someone falling asleep, intoxicated, overmedicated." Cooke answered "Yes," to a question asking, "And have you in the course of your experience often encountered folks that did the same thing that Ms. Downs did that, in fact, were based on your

7

experience intoxicated, sleepy, overmedicated, drowsy, whatever?" After reviewing the evidence as stated above and giving full consideration to the totality of the circumstances and Cooke's law enforcement experience, we conclude the trial court reasonably could have concluded that (1) Cooke did not stop the vehicle solely for failing to maintain a single lane, and (2) Cooke observed driving behavior that reasonably lead him to believe appellant was driving while intoxicated, asleep, overmedicated, or otherwise impaired. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (holding officer's extensive experience in detecting intoxicated drivers, coupled with his training to view weaving specifically as an indication of intoxicated driving, established reasonable suspicion to justify an investigative detention when he observed vehicle weaving in and out of his lane several times over a short distance late at night). These circumstances established a reasonable suspicion that crime was being committed. The trial court did not abuse its discretion in denying the motion to suppress based on this record. We overrule appellant's first issue. Because we have found the evidence supports the trial court's implied finding that Cooke had a reasonable suspicion to stop the vehicle, we need not address appellant's second issue arguing Cooke was not acting within a community-caretaking capacity. *See Willover*, 70 S.W.3d at 845.

We affirm the trial court's judgment.


/s/ William J. Boyce
Justice



Panel consists of Chief Justice Frost and Justices Boyce and Jamison. (Jamison, J., dissenting).
Publish — TEX. R. APP. P. 47.2(b).