ACCEPTED
14-14-00957-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/16/2015 2:23:26 PM
CHRISTOPHER PRINE
CLERK

## Nos. 14-14-00957-CR; 14-14-00959-CR

In the
**Court of Appeals**
For the
**Fourteenth District of Texas**
At Houston

────────◆────────

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

9/16/2015 2:23:26 PM

CHRISTOPHER A. PRINE
Clerk

**Nos. 1424405; 1424406**
In the 337th Criminal District Court
Of Harris County, Texas

────────◆────────

**GERALINE GREGORY LINCOLN**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

────────◆────────

STATE'S APPELLATE BRIEF

────────◆────────

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741

**CATINA HAYNES**
Assistant District Attorney

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809
Hervey_Melissa@dao.hctx.net

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Because this Court has already set this case for submission on the briefs of the parties, without oral argument, the State does not request oral argument. However, the State would like to reserve the right to present oral argument if this Court should reconsider its submission decision and decide that it will hear oral argument, afterall.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Melissa P. Hervey**—Assistant District Attorney on appeal

**Catina Haynes; Jennifer Falk**—Assistant District Attorneys at suppression hearing

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

*Appellant or Criminal Defendant:*

**Geraline Gregory Lincoln**

*Counsel for Appellant:*

**Megan E. Smith**—Defense Counsel on appeal

917 Franklin Street, Suite 310
Houston, Texas 77002

**Kendric M. Ceaser**—Defense Counsel at suppression hearing

1302 Waugh Drive, No. 367
Houston, Texas 77019

*Trial Judge:*

**Honorable Renee Magee**—Presiding Judge of the 337th Criminal
District Court

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ....................................................i

IDENTIFICATION OF THE PARTIES ....................................................i

TABLE OF CONTENTS ........................................................ ii

INDEX OF AUTHORITIES........................................................ iii

STATEMENT OF THE CASE........................................................1

STATEMENT OF FACTS ........................................................2

SUMMARY OF THE ARGUMENT ........................................................4

REPLY TO APPELLANT'S SOLE POINT OF ERROR........................................................5

    **I.** *STANDARD OF REVIEW REGARDING DENIAL OF APPELLANT'S MOTION TO SUPPRESS* ........................................................5

    **II.** *REASONABLE SUSPICION TO INITIATE A TRAFFIC STOP* ........................7

***III. THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTIONS TO SUPPRESS UPON CONCLUDING THAT THE POLICE HAD REASONABLE SUSPICION TO DETAIN APPELLANT FOR A TRAFFIC OFFENSE*** ................8

CONCLUSION AND PRAYER ..............................................................................15

CERTIFICATE OF COMPLIANCE.....................................................................16

CERTIFICATE OF SERVICE ..............................................................................17

## INDEX OF AUTHORITIES

**CASES**

*Abney v. State*,
   394 S.W.3d 542 (Tex. Crim. App. 2013)...........................................................7, 8

*Amador v. State*,
   275 S.W.3d 872 (Tex. Crim. App. 2009) ..............................................................5

*Carmouche v. State*,
   10 S.W.3d 323 (Tex. Crim. App. 2000).............................................................5, 12

*Carroll v. United States*,
   267 U.S. 132 (1925) .............................................................................................8

*Castro v. State*,
   227 S.W.3d 737 (Tex. Crim. App. 2007)............................................................14

*Ford v. State*,
   158 S.W.3d 488 (Tex. Crim. App. 2005).............................................................7

*Harrison v. State*,
   205 S.W.3d 549 (Tex. Crim. App. 2006).............................................................6

*Jaganathan v. State*,
   No. PD-1189-14, slip op. (Tex. Crim. App. Sept. 16, 2015) ..............................14

*Krug v. State*,
   86 S.W.3d 764 (Tex. App.—
   El Paso 2002, pet. ref'd).....................................................................................9

*Martinez v. State*,
  358 S.W.3d 919 (Tex. Crim. App. 2011) ................................................................6

*Miller v. State*,
  418 S.W.3d 692 (Tex. App.—
  Houston [14th Dist.] 2013, pet. ref'd) ........................................ 7, 8, 15

*State v. Dixon*,
  206 S.W.3d 587 (Tex. Crim. App. 2006) ..............................................6, 7

*State v. Duran*,
  396 S.W.3d 563 (Tex. Crim. App. 2013) ...................................................13

*State v. Elias*,
  339 S.W.3d 667 (Tex. Crim. App. 2011) ........................................ 8, 14, 15

*State v. Ross*,
  32 S.W.3d 853 (Tex. Crim. App. 2000) ..............................................5, 6

*State v. Woodard*,
  341 S.W.3d 404 (Tex. Crim. App. 2011) ...................................................7

*Terry v. Ohio*,
  392 U.S. 1 (1968) ..........................................................................................8

*Turrubiate v. State*,
  399 S.W.3d 147 (Tex. Crim. App. 2013) ...................................................5

*Valtierra v. State*,
  310 S.W.3d 442 (Tex. Crim. App. 2010) ........................................ 5, 6, 7

*Zuniga-Hernandez v. State*,
  No. 14-14-00346-CR, 2015 WL 4930576 (Tex. App.—
  Houston [14th Dist.] Aug. 18, 2015, no. pet. h.) ................................8, 15

**STATUTES**

TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) ................................................1

TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) ................................................1

TEX. PENAL CODE ANN. § 46.04(a) ........................................................................1

TEX. PENAL CODE ANN. § 46.04(e) ........................................................................1

TEX. TRANSP. CODE ANN. § 544.010 ......................................................................9

iv

TEX. TRANSP. CODE ANN. § 545.051(a)........................................................9

TEX. TRANSP. CODE ANN. § 545.060 ..........................................................9

TEX. TRANSP. CODE ANN. § 545.104 ..........................................................9

## RULES

TEX. R. APP. P. 9.4(i).................................................................................16

TEX. R. APP. P. 38.2(a)(1)(A)................................................................... i

TEX. R. APP. P. 39.1.................................................................................. i

**TO THE HONORABLE COURT OF APPEALS:**

**<u>STATEMENT OF THE CASE</u>**

In cause number 1424405, the State charged appellant by indictment with the second-degree felony offense of possession of a controlled substance—cocaine—in an amount weighing more than four grams, but less than 200 grams, by aggregate weight; the State also alleged a punishment-enhancement paragraph. (CR 1424405 – 17); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a); TEX. HEALTH & SAFETY CODE ANN. § 481.115(c).[1] In cause number 1424406, the State charged appellant by indictment with the third-degree felony offense of unlawful possession of a firearm by a convicted felon; the State also alleged a punishment-enhancement paragraph. (CR 1424406 – 15); *see* TEX. PENAL CODE ANN. § 46.04(a); TEX. PENAL CODE ANN. § 46.04(e).

Appellant filed a pretrial motion to suppress in each case, which the trial court denied after a dispositive hearing on the merits of the motion. (CR 1424405 – 13-16); (CR 1424406 – 11-14); (RR III – 3-6). On November 21, 2014, in accordance with a plea bargain between appellant and the State, appellant pled

---

[1] The Clerks' Record for appellant's cases consists of one main volume and one supplemental volume for each case, hereinafter referenced as (CR 1424405 – [page number]) and (CR 1424405 Supp. – [page number]), and (CR 1424406 – [page number]) and (CR 1424406 Supp. – [page number]). The Reporter's Record consists of four volumes, hereinafter referenced as (RR I-IV – [page number]). Exhibits admitted by the trial court are contained in Volume IV of the Reporter's Record and will be cited as (RR IV – [SX or DX] [exhibit number]). References to appellant's brief will be cited as (AB – [page number]).

"guilty" as charged in each case, and pled "true" to the State's punishment-enhancement allegation in each case, and the State recommended to the trial court that appellant be sentenced to serve eight years in the Texas Department of Criminal Justice, Correctional Institutions Division, for each offense, with the prison terms to run concurrently. (CR 1424405 – 32-42, 46-47); (CR 1424406 – 34-44, 48-49). The trial court accepted appellant's "guilty" and "true" pleas; assented to the terms of the plea-bargain agreement between appellant and the State; and, on November 21, 2014, sentenced appellant in accordance with that agreement. (CR 1424405 – 32-42, 46-47); (CR 1424406 – 34-44, 48-49). The trial court certified that appellant retained the right to appeal the matters that appellant raised in his written, pretrial motions to suppress. (CR 1424405 – 44); (CR 1424406 – 46). Appellant timely filed written notice of appeal on November 21, 2014. (CR 1424405 – 48); (CR 1424406 – 50).

————————◆————————

## STATEMENT OF FACTS

On the afternoon of April 10, 2014, Deputies Robert Johnson and Mohamd Bousalmi with the Harris County Precinct One Constable's Office were patrolling a neighborhood in North Houston in Johnson's patrol car. (RR II – 6-10, 19, 22-23, 51-52, 55). Around 5:00 PM, as the deputies were traveling westbound on Ogden Forest Drive (Ogden), they observed appellant driving a white sedan

2

northbound, down the middle of the road, on Saratoga Forest Drive (Saratoga). (RR II – 8-10, 22, 31-32, 57). Though traffic was "[v]ery light[,]" and Saratoga did not have painted lane-divider lines, the road was intended for two-way traffic; thus, the deputies considered appellant's driving in the middle of the road, straddling the north- and southbound lanes, to be "reckless" and a traffic offense. (RR II – 8-10, 22, 31-34, 49-50, 53, 57, 67-68). The deputies then observed appellant "roll[] through" a stop sign at the intersection of Saratoga and Whitter Forest Drive (Whitter), and turn onto Whitter without signaling the turn. (RR II – 10-11, 20, 34-35, 53, 55-56, 71).

Johnson and Bousalmi began to pursue appellant in the Johnson's patrol car, intending to stop appellant for the traffic offenses. (RR II – 11-12). As they did so, the deputies observed appellant turn left onto Wildforest Drive (Wildforest), again without signaling the turn. (RR II – 11-12, 38-39, 56-57). Johnson followed appellant onto Wildforest and activated the emergency lights on Johnson's patrol car, at which point appellant "accelerated at a high rate of speed." (RR II – 12, 41-42). Appellant then hurriedly turned into the driveway of a residence on Wildforest, parked his car, and "immediately tr[ied] to exit the vehicle and distance himself from it." (RR II – 13, 41-42, 48, 56-57). Johnson "[t]old [appellant] to get back into [appellant's] vehicle for officer's [sic] safety[,]" and appellant complied. (RR II – 12, 56).

3

Johnson observed that appellant was "very nervous[,]...couldn't sit still[,]...kept on looking in all directions[,] and he was sweating" when Johnson spoke to him. (RR II – 13). Johnson also noted the smell of marijuana when Johnson approached appellant's vehicle, and observed that the female passenger in appellant's car also appeared to be nervous. (RR II – 13-14). Because of appellant's behavior, Johnson asked the female passenger whether there were any narcotics in appellant's vehicle; the passenger "hesitated at first and then she stated, 'no[,]'" but she then conceded, "he might." (RR II – 14). The passenger also admitted to Johnson that there was a firearm inside of appellant's car. (RR II – 14). Johnson confirmed that appellant had two open warrants for his arrest, and took him into custody. (RR II – 15). The police then recovered a firearm and cocaine from appellant's vehicle. *See* (CR 1424405 – 17); (CR 1424406 – 15).

————————◆————————

## SUMMARY OF THE ARGUMENT

The trial court properly denied appellant's motions to suppress upon concluding that, under the totality of the circumstances and using an objective standard, the police had at least reasonable suspicion to believe that appellant had committed a traffic infraction and, thus, did not violate the Fourth Amendment by detaining appellant.

————————◆————————

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

In appellant's only point of error on appeal, appellant argues that the trial court abused its discretion by denying appellant's motions to suppress, and reiterates appellant's contentions to the trial court that the police violated the Fourth Amendment by detaining appellant without any reasonable justification.

### I. Standard of Review Regarding Denial of Appellant's Motion to Suppress

A trial court's decision to deny a defendant's motion to suppress is examined on appeal for abuse of discretion using a bifurcated standard of review. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In the first part of the bifurcated review, an appellate court "give[s] almost total deference to a trial court's express or implied determination of historical facts…." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *see Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). In the second portion of the review, an appellate court evaluates *de novo* the trial court's application of the law to the facts. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

In a hearing on a defendant's motion to suppress, the trial court is the sole factfinder and judge of the credibility of the witnesses, and is the exclusive arbiter of the weight to be given to the witnesses' testimony and evidence admitted. *Valtierra*, 310 S.W.3d at 447. A trial court is entitled to believe or disbelieve all or

any part of any witness's testimony, even if that testimony is uncontroverted. *Valtierra*, 310 S.W.3d at 447; *Ross*, 32 S.W.3d at 855. A reviewing court should be especially deferential to a trial court's determination of historical facts that turn on the trial court's evaluation of the credibility of the witnesses because the trial court was best able "to observe the witness[es'] demeanor and appearance." *Valtierra*, 310 S.W.3d at 447.

If the trial court makes express findings of fact, an appellate court "view[s] the evidence in the light most favorable to [the trial court's] ruling and determine[s] whether the evidence supports [those] factual findings." *Id.* When findings of fact are not entered by a trial court, a reviewing court still views the evidence in the light most favorable to the trial court's ruling, but also "'assume[s] [that] the trial court made implicit findings of fact that support its ruling[,] as long as those findings are supported by the record.'" *Valtierra*, 310 S.W.3d at 447 (quoting *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006)); *Ross*, 32 S.W.3d at 855.

A trial court does not abuse its discretion by denying a motion to suppress unless that decision lies outside the "zone of reasonable disagreement." *Martinez v. State*, 358 S.W.3d 919, 922 (Tex. Crim. App. 2011); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). As a general rule, appellate courts view the evidence in the light most favorable to the trial court's ruling and, thus, should

"afford the prevailing party 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). Further, a reviewing court must affirm a trial court's ruling to deny a motion to suppress "if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra*, 310 S.W.3d at 447-48 (quoting *Dixon*, 206 S.W.3d at 590).

## II. Reasonable Suspicion to Initiate a Traffic Stop

A traffic stop, like any other investigative detention, requires a police officer to have reasonable suspicion of criminal activity. *See Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013); *Miller v. State*, 418 S.W.3d 692, 696 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("If an officer has a reasonable basis for suspecting a person has committed a traffic offense, then the officer legally may initiate a traffic stop."). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person is, has been, or soon will be engaged in criminal activity. *Abney*, 394 S.W.3d at 548; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The State does not have to establish with absolute certainty that a crime occurred or was underway;

7

rather, the State must simply meet its burden of proving that, under the totality of the circumstances, the seizure was reasonable. *Abney*, 394 S.W.3d at 548.

Courts evaluate the reasonableness of the detention objectively, disregarding the actual subjective intent or motive of the detaining officer. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) ("[I]n making [the] assessment [regarding the reasonableness of a detention,] it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure...'warrant a man of reasonable caution in the belief' that the action taken was appropriate?") (quoting *Carroll v. United States*, 267 U.S. 132 (1925)); *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). Thus, an officer's stated purpose for a traffic stop can neither validate an illegal stop nor invalidate a legal stop because the stop's legality rests on the totality of the circumstances, viewed objectively." *Zuniga-Hernandez v. State*, No. 14-14-00346-CR, 2015 WL 4930576, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no. pet. h.); *Miller*, 418 S.W.3d at 696.

### III. The Trial Court Properly Denied Appellant's Motions to Suppress upon Concluding that the Police had Reasonable Suspicion to Detain Appellant for a Traffic Offense

In the suppression hearing, Johnson and Bousalmi testified that they detained appellant after witnessing him commit five traffic violations: (1) failure

to maintain a single lane,[2] or failure to drive on the right half of the roadway;[3] (2) failure to stop at a stop sign;[4] (3) failure to signal a turn (onto Whitter);[5] (4) failure to signal a turn (onto Wildforest);[6] and (5) failure to signal a turn (into the driveway of the residence on Wildforest).[7] The deputies unwaveringly explained that they had a clear and unobstructed view of appellant's vehicle when they observed those infractions; that it was daytime and the weather was clear; and that neither the position of the sun nor the tint on the patrol car's windows affected visibility. (RR II – 19-20, 30, 48, 55-56, 63-64, 68).

The State also proffered a video of the deputies' pursuit and stop of appellant, recorded by the video equipment mounted on the dashboard of Johnson's patrol car. *See* (RR IV – SX 2). The video confirms that appellant failed to signal his turn into the driveway, but does not show appellant's first four traffic violations. *Id*. Johnson explained that his video-recording equipment was functioning properly on the offense date, but that the first four infractions are not

---

[2] *See* TEX. TRANSP. CODE ANN. § 545.060.
[3] *See* TEX. TRANSP. CODE ANN. § 545.051(a).
[4] *See* TEX. TRANSP. CODE ANN. § 544.010.
[5] *See* TEX. TRANSP. CODE ANN. § 545.104.
[6] *See* TEX. TRANSP. CODE ANN. § 545.104.
[7] *See* TEX. TRANSP. CODE ANN. § 545.104; *see also Krug v. State*, 86 S.W.3d 764, 766-67 (Tex. App.—El Paso 2002, pet. ref'd) (holding that Transportation Code Section 545.104(a) applies to a vehicle turning into a private driveway and, thus, the defendant's failure to signal such a turn so constituted a traffic violation).

9

apparent on the video because of the way that Johnson's patrol car was positioned, relative to appellant's vehicle, during the events leading up to the stop:

> The dash cam would not show, you know, the turn signals due to the way my patrol car was positioned. My patrol vehicle was positioned westbound, but then I was facing northbound watching for the probable cause for the defendant to display. Also, when traveling north on Saratoga, once again, my camera was pointed northbound and [appellant] was traveling westbound on Whitter Forest. (RR II – 16).

Additionally, Johnson described that, because he is unable to turn or adjust the view of his dashboard camera while he is operating his patrol car, but he is able to move his head, he is able to personally observe more than what the camera can capture on video. (RR II – 47-49). Toward that end, Johnson and Bousalmi both averred that they saw appellant's traffic violations from where they sat in Johnson's patrol car, even if the fixed-position dashboard camera did not capture the infractions on the video. (RR II – 19-20, 30, 47-48, 68).

Appellant testified in his defense at the suppression hearing and claimed that he drove entirely on the right side of the road, that he came to a full stop at the stop sign at the intersection of Saratoga and Whitter, and that he used his turn signal at every turn. (RR II – 87-89, 93).

At the conclusion of the hearing, the trial court denied appellant's motions to suppress and orally made the following findings of fact and conclusions of law, in pertinent part:

10

The Court makes the finding that the detention was by way of a traffic stop and that there was no warrant that existed for that traffic stop. And it is that traffic stop and the probable cause for the traffic stop which is at issue in the hearing. I make the finding that the officers, Officer Johnson and Officer Bousalmi, testified to five different – five separate and distinct reasons for a traffic stop.

And the Court makes the findings that they were articulated as first being a stop for driving into the lane of oncoming traffic or not remaining in a single lane of traffic along the drive of Saratoga Forest Drive, which was testified to by both Officer Johnson and Officer Bousalmi. The second was an articulated reason for the stop, for failure to stop at a stop sign at the corner of Saratoga and Whitter. And that was testified to by both Officer Johnson and Officer Bousalmi.

The third reason was for failure to signal a turn at the corner of Saratoga and Whitter. The fourth one would be for failure to signal a turn at the corner of Whitter and Wildforest. And the fifth one will be failure to signal a turn from Wildforest into the driveway at 8711 Wildforest. And both officers testified to those three different failure to signal locations.

I make the finding that there was a videotape of the stop and 30 seconds before the stop. And I do make a finding that on that videotape it did not clearly show four out of those five violations. I do make a finding that although the violations were not shown on videotape, the videotape did not contradict the officers' testimony. The violations just were not shown.

And I make a finding that the officers did explain a reason, an objective reason for why four out of the five violations were not shown on the videotape of the traffic stop, but that the final violation that they articulated, which would be the turn from Wildforest Drive into and onto the driveway at 8711 Wildforest, that was shown on the videotape that was provided from the officers' patrol vehicle.

The Court finds that the officers' testimony was credible as to all of the reasons articulated, in spite of the fact that four of the five were not shown on the videotape from the officers' patrol vehicle. And I

11

find that Officer Johnson had an objectively reasonable suspicion that a traffic violation had occurred before stopping [appellant's] vehicle.

I find the government did prove by a preponderance of the evidence that no Fourth Amendment violation of [appellant's] rights had occurred as a result of this traffic stop, and that the totality of the circumstances -- that under the totality of the circumstances and the evidence presented, that the stop was reasonable because the police officers did have probable cause to detain [appellant] for traffic violations observed in Inwood Forest Subdivision on July 12th, 2014, [sic] and the motion to suppress is denied. (RR III – 4-6).

These findings demonstrate that the trial court, presiding as the sole factfinder and judge of the witnesses' credibility, explicitly found the officers' testimony regarding appellant's numerous traffic violations credible, and found appellant's contradictory testimony to not be credible.

The trial court's findings are entitled to near-total deference because, contrary to appellant's supposition, they are not contradicted by indisputable visual evidence; that is, unlike in *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000), cited by appellant, this is not a case where the video irrefutably shows that the circumstances were not as the officers testified. *See Carmouche*, 10 S.W.3d at 332 (refusing, in the "narrow circumstances" of the case, to give almost total deference to the trial court's finding of voluntary consent when the video of the interaction "present[ed] indisputable visual evidence contradicting essential portions of [the officer's] testimony."). Rather, here, the officers' dashboard camera was in a fixed position facing out of the front of the patrol car and could

12

not be safely adjusted while the encounter was in progress. (RR II – 47-48). Thus, the camera was able to record only the scene directly in its forward-facing view as Johnson maneuvered the vehicle. This means that, although the officers could physically swivel their heads to view matters occurring to the far left and right of the patrol car, the dashboard video would not be able to capture such events, or show any of the peripheral scene beyond the scope of the camera's fixed vantage point.

Accordingly, the video does not definitively corroborate either the deputies' or appellant's testimony about appellant's first four traffic violations—though it does substantiate the deputies' account that appellant committed the fifth violation by failing to signal his turn into the driveway—and, so, it would be inappropriate for this Court to review the video *de novo* and disregard the trial court's findings regarding the historical facts and the credibility of the witnesses. Instead, this Court should defer to the trial court's explicit findings that the deputies personally saw appellant commit the five traffic violations, given that those findings are wholly based on the court's evaluation of the deputies' credibility, and that they are not contradicted by indisputable visual evidence. *See State v. Duran*, 396 S.W.3d 563, 572-74 (Tex. Crim. App. 2013) (asserting that an appellate court must give "almost total deference" to the trial judge's fact findings which are based on the judge's evaluation of credibility and which are not contradicted by

13

"indisputable visual evidence."); *see also Jaganathan v. State*, No. PD-1189-14, slip op., at \*6 (Tex. Crim. App. Sept. 16, 2015) (recognizing that "there is a difference between what an officer sees during an ongoing event and what [an appellate court] see[s] when reviewing a video."), *available at* http://www.search.txcourts.gov/Case.aspx?cn=PD-1189-14&coa=coscca.

Because the trial court was in the best position to evaluate the witnesses' credibility and demeanor, it was not unreasonable for the judge to have credited Johnson's and Bousalmi's testimony that they observed appellant commit all five of the traffic offenses and, thus, to have concluded from the totality of the circumstances that the deputies had reasonable suspicion to detain appellant for any or all those infractions. *See Castro v. State*, 227 S.W.3d 737, 742-43 (Tex. Crim. App. 2007) (finding the trial court's decision to credit the officer's testimony that he observed the defendant commit a traffic offense reasonable, given that the trial judge was in the best position to observe the officer's credibility and demeanor); *Elias*, 339 S.W.3d at 675 (holding that the officer's testimony that the defendant failed to properly signal a turn, when viewed objectively, supported a legal conclusion that there existed at least a reasonable suspicion that the defendant had committed a traffic infraction). The trial court's decision in this regard was appropriate even if this Court determines that Johnson incorrectly identified appellant's first traffic offense, initially, as failure to maintain a single lane because

14

Johnson's subjective, stated belief cannot invalidate his objectively-legal stop of appellant for failing to drive on the right half of the road, among appellant's other infractions. *See Elias*, 339 S.W.3d at 675 ("[I]t does not matter whether the objective facts support a detention for the specific offense [that the officer] intended to detain [the defendant] for as long as the facts otherwise objectively support a detention for *some* offense....") (emphasis in original); *Zuniga-Hernandez*, 2015 WL 4930576, at *2 ("An officer's stated purpose for a traffic stop can neither validate an illegal stop nor invalidate a legal stop because the stop's legality rests on the totality of the circumstances, viewed objectively."); *Miller*, 418 S.W.3d at 696 (same).

This Court should affirm the trial court's conclusions that no Fourth Amendment violation occurred in this case, and that, accordingly, appellant's motions to suppress should be denied.

————————◆————————

## CONCLUSION AND PRAYER

For the foregoing reasons, the State respectfully submits that the trial court properly denied appellant's motions to suppress upon concluding that, under the totality of the circumstances, the police had reasonable suspicion to detain appellant. Thus, the State respectfully prays that this Court will overrule appellant's complaints on appeal, and will affirm the trial court's ruling.

Respectfully submitted,


**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net


## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 3,369 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).


/s/ *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney

16

Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has directed the e-filing system eFile.TXCourts.gov to serve a true and correct copy of the foregoing document to Megan E. Smith, appellant's attorney of record on appeal, on September 16, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

megan@megansmithlaw.com

/s/ *Melissa Hervey*

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

17