**Opinion issued March 8, 2016**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00753-CR**

———————————

**MARK AARON MAHLOW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1931546**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Mark Aaron Mahlow, of driving while intoxicated[1] and assessed his punishment at one hundred-eighty days in the Harris

---

[1]    *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(a) (West Supp. 2015).

County jail, probated for one year. In his first two points of error, appellant contends that the trial court abused its discretion when it denied his motions to suppress because his initial detention was not supported by reasonable suspicion and his arrest at the scene of the traffic stop was unsupported by probable cause. In his third point of error, appellant argues that the trial court abused its discretion in denying his motion for new trial. We affirm.

## Background

While on patrol in downtown Houston in the early morning hours of November 24, 2013, Officer James Kneipp observed appellant driving next to another vehicle, "drag racing down Fannin."[2] Officer Kneipp testified that he worked in downtown Houston and that the speed limit there is thirty miles per hour. He further testified that appellant was driving at a very high rate of speed, his vehicle's tires were spinning in the back, and he was "blowing through lights without slowing down." According to Officer Kneipp, appellant was driving in an unsafe manner and that, at "[t]he speed he was going, he could've caused an accident or actually killed somebody."

Despite having activated the emergency lights and siren on his patrol car, Officer Kneipp "had to chase [appellant] down." After pursuing appellant for

---

[2] At the time of trial, Officer Kneipp had been employed by the Houston Police Department for five and a half years and had previously been a military police officer for twenty years.

twenty or thirty seconds, Officer Kneipp caught up to appellant five blocks away as he was pulling into his apartment complex. The record reflects that Officer Kneipp stopped appellant at 2:47 a.m.

As he approached appellant's black Chevy Camaro, Officer Kneipp smelled a strong odor of alcohol emanating from the vehicle. He told appellant that he had stopped him for driving at a high rate of speed downtown. Officer Kneipp testified that appellant had "glossy red eyes," slurred speech, and that he could smell a lot of alcohol coming from his breath. Appellant told the officer that he was coming from Coaches, a bar and grill in Katy. Officer Kneipp also observed appellant swaying from side to side and staggering at the scene.

Officer Kneipp administered the horizontal gaze nystagmus (HGN) test to appellant. Officer Kneipp testified that, based on appellant's signs of intoxication and the results of the HGN test, he detained appellant by handcuffing him and placing him in the patrol car to transport him to central intox for further field sobriety testing. According to Officer Kneipp, he did not continue testing appellant at the scene because there was no video camera in his car and he wanted the additional tests to be videotaped.

During Officer's Kneipp's testimony, trial counsel conducted a voir dire examination of the officer outside the presence of the jury. Thereafter, counsel moved to suppress the HGN test as well as "everything after the detention based on

[the] HGN that was performed improperly." The trial court granted the motion to suppress the HGN test but ruled that "anything after this is not going to be suppressed." Counsel later moved to suppress the initial detention arguing that the officer had failed to demonstrate specific and articulable facts supporting reasonable suspicion for the initial stop. The trial found that the officer had reasonable suspicion to stop appellant and denied the motion.

After appellant arrived at the police station, Mary Skelton, an HPD evidence technician, administered the one-leg stand test, the walk-and-turn test, and a breath test to appellant. The video of appellant performing the tests as well as his breath test results were admitted at trial. Skelton testified that there are four clues of impairment for the one-leg stand test and six clues for the walk-and-turn test, and that exhibiting at least two clues on a given test indicates intoxication. She further testified that appellant exhibited no clues of impairment on the one-leg stand test but exhibited four clues on the walk-and-turn test. Following the two tests, Officer Kneipp read the DIC-24 form to appellant and placed him under arrest. Based on the appellant's test results, Skelton testified that it was her opinion that appellant had lost the normal use of his mental and physical faculties.

Carly Bishop, an HPD technical supervisor, testified that the results from appellant's two breath samples showed a breath-alcohol concentration (BAC) of

0.128 and 0.134, respectively.[3]  Bishop testified that a person with these BAC levels would have lost the normal use of his mental and physical faculties.

After the State rested, trial counsel moved to suppress appellant's initial detention on the grounds that it lasted longer than necessary and amounted to an illegal custodial arrest unsupported by probable cause.  The trial court denied the motion.

The jury ultimately found appellant guilty of driving while intoxicated and assessed his punishment at one hundred-eighty days in the Harris County jail, probated for one year.  After judgment was entered, appellant filed a motion for new trial contending, among other things, that the trial court erred in denying his motions to suppress.  The trial court denied his motion for new trial on October 29, 2014.  Appellant timely filed this appeal.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion.  *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).  A trial court abuses its discretion when its ruling is arbitrary or unreasonable.  *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).  A trial court's ruling on a

---

[3]    Under the Texas DWI statute, intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more.  *See Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010).

motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

We apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that turn on the credibility of a witness, and applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Absent a showing that the trial court abused its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011).

A trial court's denial of a motion for new trial is also reviewed under an abuse of discretion standard. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014).

## Applicable Law

An investigative detention requires a police officer to have reasonable suspicion of criminal activity. *See Matthews v. State*, 431 S.W.3d 596, 602–03 (Tex. Crim. App. 2014). The reasonableness of a temporary detention is determined from the totality of the circumstances. *See id.* at 603. If an officer has a reasonable basis for suspecting a person has committed a traffic offense, then the officer legally may initiate a traffic stop. *Miller v. State*, 418 S.W.3d 692, 696 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Reasonable suspicion is present if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer reasonably to conclude that a person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The State bears the burden to show that an officer had at least a reasonable suspicion the defendant either had committed an offense, or was about to do so, before they made the warrantless stop.[4] *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581 (1989)).

Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *United States v.*

---

[4] The State stipulated at trial that appellant was arrested without a warrant.

*Watson*, 423 U.S. 411, 418, 96 S. Ct. 820 (1976)). "Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Amador*, 275 S.W.3d at 878. "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* (citations omitted). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction.'" *Id.* (citation omitted).

## Analysis

### A. Investigative Detention or Arrest?

In his second point of error, appellant contends that the trial court abused its discretion in denying his motion to suppress because his initial detention at the scene was actually an unlawful custodial arrest unsupported by probable cause.

"Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Additionally, "whether a detention is an actual arrest or an

8

investigative detention depends on the reasonableness of the intrusion under all of the facts." *Id.* (citing *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 894 (1997)). During an investigative detention, an officer may employ the force reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Rhodes*, 945 S.W.2d at 117. However, if the force utilized exceeds that reasonably necessary to effect the goal of the stop, this force may transform an investigative detention into a full-blown arrest. *Mount*, 217 S.W.3d at 724–25.

Additional factors that courts consider in determining the reasonableness of the detention include the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect. *State v. Moore*, 25 S.W.3d 383, 386 (Tex. App.—Austin 2000, no pet.). The officer's opinion, while not determinative, is another factor to be considered. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); *Moore*, 25 S.W.3d at 386. We also consider whether the officer actually conducted an investigation after seizing the suspect. *Moore*, 25 S.W.3d at 386. "'Reasonableness' must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight." *Rhodes*, 945 S.W.2d at 118.

## 1. Length of Detention

Officer Kneipp testified that he stopped appellant at 2:47 a.m. The record reflects that appellant's vehicle was towed from the scene at 3:05 a.m. Skelton administered the breath test to appellant at 4:08 a.m. Less than an hour and a half passed between the initial traffic stop and appellant's transport to the station and the administration of the last test to him. This period of time supports a finding that appellant was reasonably detained. *See Castro v. State*, 373 S.W.3d 159, 165 (Tex. App.—San Antonio 2012, no pet.) ("A detention's duration must demonstrate the officers efficiently pursued an investigation to confirm or dispel their suspicions.").

## 2. Amount of Force and Continued Investigation

Here, Officer Kneipp was alone when he conducted the initial traffic stop of appellant in the early morning hours. Officer Kneipp testified that he handcuffed appellant in order to transport him to the station so that the additional field sobriety tests could be videotaped. *See Amores*, 816 S.W.2d at 412 (noting officer's testimony is factor to be considered, along with other facts and circumstances of detention, in determining whether arrest has taken place). There is no evidence suggesting that appellant was handcuffed prior to his transport and the record reflects that the handcuffs were removed once the investigation continued at the station. Handcuffing alone does not necessarily transform an investigative

10

detention into an arrest. *See Sheppard v. State*, 271 S.W.3d 281, 283 (Tex. Crim. App. 2008) ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'"); *Rhodes*, 945 S.W.2d at 118 (agreeing with court of appeals's conclusion that there is no bright-line test providing that mere handcuffing is always equivalent of arrest); *see also Hauer v. State*, 466 S.W.3d 886, 891–92 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding officer's actions in handcuffing defendant suspected of driving while intoxicated and keeping him in patrol car for approximately thirty minutes until DWI task force officer arrived at scene to conduct field sobriety tests was temporary detention). We find Officer Kneipp's handcuffing of appellant to transport him to the station to conduct additional tests was a reasonable detention "for the purpose of conducting an investigation." *Hauer*, 466 S.W.3d at 892.

### 3. *Additional Factors*

Courts may also consider the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect when determining the reasonableness of the detention. *Moore*, 25 S.W.3d at 386. Here, Officer Kneipp testified that based in part on the signs of intoxication he observed—the odor of alcohol emanating from appellant's car, appellant's glossy red eyes, slurred speech, swaying, and staggering—he believed

11

appellant had been drinking and detained him. The record reflects that the initial traffic stop took place at 2:47 a.m. and that Officer Kneipp was alone when he conducted it. These factors support a conclusion that appellant was reasonably detained at the scene.

In light of the above, we conclude that Officer Kneipp's seizure of appellant was not an arrest, but rather a temporary detention for the purpose of continuing the DWI investigation at the station. Because the trial court did not abuse its discretion in denying his motion to suppress, we overrule appellant's second issue.

## B. Validity of Investigative Detention

Having found that the stop was a temporary detention, we next consider appellant's first point of error contending that the trial court abused its discretion in denying his motion to suppress because his initial detention was not supported by reasonable suspicion. In support of his argument, appellant relies on *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005).

In *Ford*, the defendant moved to suppress evidence asserting that his initial detention for failure to maintain a proper following distance was not supported by reasonable suspicion. *See id*. at 490. The trial court overruled the defendant's motion and the court of appeals upheld the ruling. *See id.* Finding that the stop was not valid because the evidence was insufficient to establish reasonable suspicion, the Court of Criminal Appeals reversed. *See id.*

The *Ford* court noted that the only testimony describing the circumstances leading up to the initial traffic stop was the trooper's testimony that the defendant was "following another car too closely." *Id*. at 493. In the "absence of any facts allowing an appellate court to determine the circumstances upon which [the trooper] could reasonably conclude that the defendant actually was, had been, or soon would have been engaged in criminal activity," the court concluded that "the trial court was presented only with a conclusory statement that the defendant was violating a traffic law," and that, "without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable." *Id.*

*Ford* is distinguishable from the case before us. Here, Officer Kneipp testified that he worked downtown and that the speed limit in downtown Houston is thirty miles per hour. He testified that he observed appellant "driving at a very high rate of speed" and in an unsafe manner and that, at "[t]he speed he was going, he could've caused an accident or actually killed somebody." The officer also noted that appellant's tires were spinning in the back and that he "was blowing through lights without slowing down." Despite the fact that Officer Kneipp had activated his patrol car's emergency lights and siren, appellant did not stop and Officer Kneipp had to "chase him down." It took Officer Kneipp twenty or thirty seconds and approximately five blocks to catch up to appellant. Officer Kneipp

13

also testified that appellant was racing another vehicle whose driver also did not stop once the pursuit began.

Considering the totality of the circumstances, we conclude that the record contains sufficient facts to support a finding that Officer Kneipp had a reasonable basis upon which to conclude that appellant was committing a traffic offense when he initiated the stop. *See Ford*, 158 S.W.3d at 492 (concluding reasonable suspicion is present if officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead officer reasonably to conclude that person actually is, has been, or soon will be engaged in criminal activity). The trial court did not abuse its discretion in denying appellant's motion to suppress the initial detention. We overrule appellant's first point of error.

## C. Motion for New Trial

In his third point of error, appellant contends that the trial court abused its discretion in denying his motion for new trial.

Following the entry of judgment, appellant timely filed a motion for new trial. The trial court held a hearing and subsequently denied the motion. Although appellant asserted several grounds for new trial in his motion,[5] he argues in his

---

5    In his motion, appellant also argued that (1) there was an improper communication between a member of the jury and the bailiff during deliberations; (2) the jury was allowed to view evidence and deliberate in the courtroom while members of the court staff were present; and (3) an acquaintance of one of the jury members was

14

brief only that the trial court abused its discretion in denying his motion for new trial because the trial court's denial of his motions to suppress was improper.

When evaluating whether a motion for new trial was properly denied based upon prior motions raised before or during trial, we first determine whether the initial motions were properly denied—if so, the trial court does not abuse its discretion in denying a defendant's new trial motion on the same grounds. *See Hughes v. State*, 962 S.W.2d 689, 696 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (finding because the "trial court did not err in denying [a defendant's] motion to suppress, it did not err in denying the motion for new trial on this same basis."). Because we previously concluded that the trial court did not abuse its discretion in denying appellant's motions to suppress, it did not abuse its discretion in denying his motion for new trial on these same grounds. *See id.*; *see also Hewitt v. State*, No. 01-03-00404-CR, 2004 WL 2476572, at *5–6 (Tex. App.—Houston [1st Dist.] Nov. 4, 2004, pet. ref'd) (not designated for publication) (holding trial court did not err in denying defendant's motion for new trial to extent it was based upon trial court's denial of his motions to suppress and exclude that were upheld by appellate court). Because appellant's complaint that the trial court denied his motion for new trial raises nothing that we have not already addressed and overruled in previous points of error, we overrule his third point of error.

---

permitted to join the jury for lunch before the trial had adjourned. However, appellant has advanced none of these arguments on appeal.

**Conclusion**

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).