Martha Hill Jamison, Justice
This State's appeal arises from the trial court's suppression of evidence obtained during a warrantless stop and blood alcohol test results in the prosecution of appellee Albert Tyrone Bernard for misdemeanor driving while intoxicated. It comes to us on remand from the Texas Court of Criminal Appeals. See State v. Bernard , 512 S.W.3d 351 (Tex. Crim. App. 2017).
We originally held that the trial court did not abuse its discretion in suppressing the warrantless stop and results of a blood draw because the State presented no evidence that Bernard's failure to stay in a single marked lane was unsafe and the traffic stop was unlawful. State v. Bernard , 503 S.W.3d 685, 691-92 (Tex. App.-Houston [14th Dist.] 2016), pet. granted, judgment vacated , 512 S.W.3d 351 (Tex. Crim. App. 2017). On remand, we address only whether "the traffic stop was supported by reasonable suspicion that Bernard was driving while intoxicated." See Bernard , 512 S.W.3d at 352. We conclude that it was not and affirm the ruling of the trial court granting Bernard's motion to suppress.
Background
We include a brief recitation of the facts relevant to this remand. Deputy Tracy Watson was traveling in Galveston County when she observed a vehicle, driven by Bernard, approximately a quarter mile in front of her. She testified that the vehicle was "swerving from lane to lane and even going into the center lane." Watson activated her emergency lights and pulled the vehicle over "to check the welfare of the driver."
Watson testified that Bernard was driving his vehicle at the correct speed, all equipment was functioning properly on the *703 vehicle, the registration and insurance were valid, and Bernard stopped his vehicle normally when he was pulled over. Watson further testified that Bernard's driving did not interfere with any other vehicles and there was nothing unsafe about his driving.
Video surveillance in Watson's vehicle recorded Bernard's driving for two minutes prior to Watson's activating her emergency lights. After viewing the video at the hearing, Watson conceded that the vehicle's tires went outside the lane only twice and "not far." She also testified that "there could have been more violations prior to the activation of my lights" but did not state that there had been. The video shows Watson approaching the vehicle, and Watson testified both that she followed Bernard for one to one-and-one-half minutes and that the video surveillance recorded two minutes before Watson initiated her emergency vehicle lights. Thus, the entire encounter is captured on video.
Deputy Jacob Manuel arrived at the scene to assist Watson with the stop. He observed the video at trial and noted that Bernard swerved twice. The first time, Bernard crossed left over the line approximately six to eight inches, and the second time, he crossed right over the line approximately four inches. Manuel later testified on redirect that he observed Bernard on the video cross the line three to four times. But the video reflects that Bernard crossed the line only two times. Manuel did not observe any interference with other vehicles or any unsafe driving.
The trial court made several findings of fact and conclusions of law relevant to our discussion.
Findings :
• Watson followed Bernard for approximately one to one-and-one-half minute before Watson activated her emergency lights and initiated a warrantless traffic stop on Bernard;
• Watson's dash cam video began recording approximately two minutes prior to her activating her emergency lights;
• Bernard properly and without incident initiated his right turn signal, changed lanes into the right lane, and pulled onto the shoulder of the roadway upon seeing Watson's flashing emergency lights;
• Watson testified Bernard's vehicle went outside his lane of travel twice and that his vehicle's tires did not cross the line very far, but about three feet or less;
• Watson testified there was nothing unsafe about Bernard's driving;
• There was no other traffic around Bernard while he was maintaining or failing to maintain a single lane;
• Manuel viewed the dash cam video and testified that Bernard's vehicle only crossed six to eight inches over the lane divider at one point, and approximately four inches at another point. He further testified that in viewing the dash cam video that it appeared to him that Bernard was mostly just "drifting" from side to side within his own lane; and
• Manuel testified Bernard's vehicle did not interfere with any other traffic and his driving was not unsafe.
Conclusions :
• Watson stopped Bernard without reasonable suspicion of driving while intoxicated. Bernard was not driving in an unsafe manner to any other vehicles on the road, and no reasonable suspicion of a traffic offense under Texas Transportation Code 545.060 existed at the time he was stopped. Bernard's driving was not *704 unsafe to himself or others as evidenced by the testimony of both Watson and Manuel.
Discussion
The State argues that the trial court abused its discretion in granting Bernard's motion to suppress because the totality of circumstances establish that there was an objective basis for Watson to have reasonable suspicion that Bernard was driving while intoxicated.
When reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the court's determination of the historical facts that the record supports, especially when those fact findings are based on an evaluation of the witnesses' credibility and demeanor.[1] Leming v. State , 493 S.W.3d 552, 562 (Tex. Crim. App. 2016) ; Guzman v. State , 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We accord the same level of deference to the trial court's rulings on mixed questions of law and fact if those decisions turn on the credibility and demeanor of the witnesses. Guzman , 955 S.W.2d at 89. We review de novo mixed questions of law and fact that do not turn on witness credibility. Id. Despite its fact-sensitive analysis, the "reasonableness" of a specific search or seizure under the Fourth Amendment is subject to de novo review. Kothe v. State , 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).
When the trial judge makes express findings of fact, as here, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. Valtierra v. State , 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. State v. Iduarte , 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Thus, if supported by the record, a trial court's ruling on a motion to suppress will not be overturned. Mount v. State , 217 S.W.3d 716, 724 (Tex. App.-Houston [14th Dist.] 2007, no pet.).
A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. Berkemer v. McCarty , 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) ; see also Derichsweiler v. State , 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The reasonableness of a temporary detention is determined from the totality of the circumstances. Zuniga-Hernandez v. State , 473 S.W.3d 845, 848 (Tex. App.-Houston [14th Dist.] 2015, no pet.). Reasonable suspicion is present if the officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead [the officer] reasonably to conclude that the person ... is, has been, or soon will be engaged in criminal activity." Derichsweiler , 348 S.W.3d at 914 ; Zuniga-Hernandez , 473 S.W.3d at 848. An officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because the stop's legality rests on the totality of the circumstances viewed objectively. Zuniga-Hernandez , 473 S.W.3d at 848.
The State argues that the totality of the circumstances establish that Watson had reasonable suspicion supporting the stop based on (1) Watson's observation that Bernard swerved out of his lane "multiple times"; (2) the video surveillance; (3) the time of the stop shortly after bars, clubs, and restaurants had closed and the *705 location of the stop; and (4) Watson's training and experience. The State also contends the trial court erroneously based its reasonable suspicion conclusion on Watson's testimony that there could have been an innocent explanation for Bernard's driving and Watson's testimony that she stopped Bernard to do a welfare check and not on suspicion of DWI.
Watson's observations and video surveillance . The State argues that Bernard's "weaving" across traffic lanes is sufficient evidence to support a finding of reasonable suspicion of intoxication even if such weaving did not support a finding of a traffic violation. As discussed, the video surveillance revealed that the vehicle crossed the line by a few inches only twice. The State seems to imply that Watson could have observed additional weaving that is not captured on video. But the video shows Watson approaching the vehicle, and Watson testified both that she followed Bernard for one to one-and-one-half minutes and that the video surveillance recorded two minutes before Watson initiated her emergency vehicle lights. Thus, the entire encounter is captured on video. Watson did not testify that she suspected Bernard was intoxicated before she pulled him over, but as noted above, Watson's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop. See ids="6839487" index="20" url="https://cite.case.law/sw3d/473/845/#p848">id. She testified that she pulled Bernard over to do a welfare check.
The State cites three cases from this court to support its argument that Bernard's "weaving" supports a finding of reasonable suspicion. Each of these cases involved either weaving back and forth across several lanes of traffic or more erratic actions by the driver than weaving alone:
• In Held v. State , this court noted that "[a]n officer's observation of a driver weaving back and forth across several lanes of traffic is sufficient to give rise to a reasonable suspicion that the driver may be intoxicated" and "[i]t is irrelevant that the actual weaving may or may not be criminal in and of itself." 948 S.W.2d 45, 51 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd).
• In Aviles v. State , an unpublished case, an officer observed the defendant "drive straight through a green light with his turn signal on," "weave in and out of his lane," and park behind a restaurant that had closed for the night. No. 14-04-00958-CR, 2005 WL 2548513, at *1 (Tex. App.-Houston [14th Dist.] Oct. 13, 2005, no pet.) (mem. op.) (not designated for publication). The officer did not pull the defendant over; rather, the officer approached the vehicle once the defendant parked behind the restaurant, and the officer noticed a strong smell of alcohol. Id. We held that the totality of the circumstances, including the defendant's "misuse of his turn signal, his erratic driving, pulling into the back of a closed restaurant late at night, and the smell of alcohol that [the officer] perceived when he approached [the] car," gave the officer reasonable suspicion to briefly detain the defendant. Id.
• In Townsend v. State , the defendant weaved "from the center lane to the left lane, and then, across traffic to the far right lane." 813 S.W.2d 181, 183 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd). We held that the defendant's "driving behavior" of weaving "back and forth across three lanes" was sufficient evidence to raise a reasonable suspicion of driving while intoxicated. Id. at 185.
Here, by contrast, the video surveillance conclusively establishes that Bernard left *706 his lane by a few inches only twice, which we do not characterize as weaving: he did not swerve across several lanes of traffic or engage in erratic or unsafe driving or any other unusual behavior.[2] See Aviles v. State , 23 S.W.3d 74, 78 (Tex. App.- Houston [14th Dist.] 2000, pet. ref'd) (noting that drifting slightly to the left on a nearly deserted road is not weaving or erratic driving).
Time and Location of the Stop . The State argues that the time and location of the stop indicate that Watson had reasonable suspicion to detain Bernard. Bernard argues that the record does not show the time or location of the stop. However, Watson testified that the stop was a short time before she wrote her supplementary officer's report at 3:20 a.m. and that it was not uncommon to encounter people at that time leaving work from bars, clubs, and restaurants. She also testified that when she stopped Bernard, he told her he was just getting off work. We agree this testimony does not establish the location of the stop, but it does establish that Bernard was leaving work around the time people leave work from bars, clubs, and restaurants.
The State cites Foster v. State , 326 S.W.3d 609 (Tex. Crim. App. 2010), in support of its argument that the time and location of the stop indicate Watson had reasonable suspicion of DWI. In that case, the Court of Criminal Appeals noted that time of day can be a relevant factor in determining reasonable suspicion. Id. at 613. Location can also be relevant when it is near a bar district where numerous DWI arrests have been made.[3] Id.
In Foster , the Court of Criminal Appeals held that the time, location, officer's training and experience, and the defendant's aggressive driving supported a finding of reasonable suspicion in the totality of the circumstances. Id. at 614. In that case, as the defendant was driving near the downtown bar district in Austin, Texas at approximately 1:30 a.m., he approached extremely close behind an officer's vehicle and lurched forward twice in an attempt to get into the left lane. Id. at 610. The defendant was so close to the police car that he did not have enough room to enter the left lane. Id. Because of the defendant's unsafe driving, the time of night, and the location near the bar district downtown, the court concluded the officer had reasonable suspicion that the defendant might be impaired. Id. at 610-11, 614.
Here, there is no evidence of aggressive driving or the location of the stop being near a bar district where numerous DWI arrests had been made. The only relevant evidence is related to when Bernard was stopped: during the early morning hours after leaving work around the time people *707 leave work from bars, clubs, and restaurants.
Watson's Training and Experience . The State also complains that the trial court failed to take Watson's training and experience into account in making its determination on reasonable suspicion. See Curtis v. State , 238 S.W.3d 376, 379-80 (Tex. Crim. App. 2007) (noting trial court was required to take into account officer's special training in detecting DWIs in considering whether stop was based on reasonable suspicion). Here, Watson testified that her DWI training consisted of one 24-hour course she took approximately ten years prior to the stop and that she never took any refresher courses. We do not agree that the record reflects the trial court failed to take Watson's training and experience into account in reaching its conclusion that she lacked reasonable suspicion for the stop.
Challenged Findings . The State also challenges two of the trial court's findings, contending that they suggest the trial court erroneously concluded Watson lacked reasonable suspicion.
The State first complains that the following finding suggests the trial court concluded there was no reasonable suspicion because there may have been an innocent explanation for Bernard's driving: "Watson testified she believed [Bernard] was texting or otherwise using his phone while driving." The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct. Id. at 379. Accordingly, the trial court's finding that Watson believed Bernard was texting or using his phone while driving is irrelevant to our analysis, and we disregard it. See State v. Kerwick , 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (noting court of appeals properly disregarded findings involving officer's subjective beliefs because they are not relevant to the determination of reasonable suspicion).
The State also complains of the trial court's finding that "Watson testified the reason for pulling over [Bernard] was that [Watson] wanted to conduct a welfare check on [Bernard]," contending that Watson's stated purpose for the stop is irrelevant because the stop's legality rests on the totality of the circumstances viewed objectively. See Zuniga-Hernandez , 473 S.W.3d at 848. We agree. Accordingly, we also disregard this finding in our analysis.[4] See Kerwick , 393 S.W.3d at 274.
Totality of the Circumstances . We conclude under the totality of the circumstances that Watson lacked reasonable suspicion for the stop. The factors relevant to our analysis under this record-Bernard's leaving his lane by a few inches only twice, the time of the stop, and Watson's training and experience-do not amount to specific, articulable facts that, combined with rational inferences from those facts, would have led Watson reasonably to conclude that Bernard was driving while intoxicated.[5] The State has failed to offer *708 facts characterizing Bernard's driving as erratic or unsafe such that the facts would support a reasonable suspicion of intoxication. See State v. Arriaga , 5 S.W.3d 804, 807 (Tex. App.-San Antonio 1999, pet. ref'd) ("Using the totality of the circumstances test ..., we agree ... that the State failed to present specific facts to justify a reasonable stop. [T]he State fails to offer facts which characterize [the defendant's] driving as erratic, unsafe, or indicative of intoxication.").
Conclusion
We affirm the ruling of the trial court granting Bernard's motion to suppress.

At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. Wiede v. State , 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).

The State cites three other cases that are similarly distinguishable. See James v. State , 102 S.W.3d 162, 167 (Tex. App.-Fort Worth 2003, pet. ref'd) (noting vehicle failed to signal when entering highway and "crossed the center stripe between the northbound lanes, then veered back over the yellow stripe onto the shoulder"); McQuarters v. State , 58 S.W.3d 250, 253 (Tex. App.-Fort Worth 2001, pet. ref'd) (noting officer observed defendant traveling at a slow speed in the passing lane with no other vehicles around and cross the left lane stripe closest to the center median twice and suspected that the defendant might be falling asleep or intoxicated); Raffaelli v. State , 881 S.W.2d 714, 715 (Tex. App.-Texarkana 1994, pet. ref'd) (noting officer observed defendant weave back and forth in his lane and then proceed at a "high rate of speed").

There is no evidence on this record that Bernard was stopped near a bar district where numerous DWI arrests had been made. We can only consider the record evidence indicating the time of day and the fact that it was around the time people leave work from bars, clubs, and restaurants.

Moreover, these findings do not indicate that the trial court concluded Watson lacked reasonable suspicion of DWI because there may have been an innocent explanation for Bernard's driving or because Watson testified she did a welfare check. The trial court expressly concluded that Watson lacked reasonable suspicion of DWI because Bernard was not driving in an unsafe manner and did not commit any traffic offenses.

The State cites several other cases to support its argument that under the totality of the circumstances, Watson had reasonable suspicion of DWI. These cases all involved more facts than are at play here or do not address the issue of reasonable suspicion of driving while intoxicated. See Leming , 493 S.W.3d at 554, 556 (involving driver's swerving from side to side numerous times, traveling below the speed limit, continually slowing down, and almost hitting the curb several times, and addressing only reasonable suspicion of a traffic violation); Curtis , 238 S.W.3d at 380 (involving officer testimony that, among other things, he had specialized training in detecting DWIs, weaving in and out of a lane was a possible indication that a driver was intoxicated, and the defendant weaved at least three times out of his lane over a relatively short distance late at night); Jones v. State , No. 14-15-00612-CR, 2016 WL 6886832, at *1, 5 (Tex. App.-Houston [14th Dist.] Nov. 22, 2016, no pet.) (mem. op.) (not designated for publication) (involving officer who observed vehicle "leaving a house where methamphetamine is sold," "swerving in [its] lane of traffic," and crossing a white line onto the shoulder of the road, including video showing car moving back and forth from one side of the lane to the other); Miller v. State , 418 S.W.3d 692, 694-95 (Tex. App.-Houston [14th Dist.] 2013, pet. ref'd) (involving vehicle that straddled lane for "several hundred feet" and testimony that officer suspected driver might be "intoxicated, overmedicated, or falling asleep").