# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-18-00495-CR

**The State of Texas, Appellant**

**v.**

**Pablo Daniel Calzada-Rodriguez, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 17-3977CR, HONORABLE DAVID GLICKLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Pablo Daniel Calzada-Rodriguez was charged by information with misdemeanor driving while intoxicated (DWI). *See* Tex. Penal Code § 49.04. He filed a motion to suppress evidence, arguing that officers performed the traffic stop that led to his arrest without a warrant or reasonable suspicion. After a hearing, the trial court granted Calzada-Rodriguez's motion and suppressed, among other things, "any and all evidence which relates to [Calzada-Rodriguez's] arrest." The State now appeals. We will affirm the trial court's order granting Calzada-Rodriguez's motion to suppress.

## BACKGROUND

At the hearing on the motion to suppress, the State called Officer Lance Cyrus of the San Marcos Police Department. Officer Cyrus testified that he was dispatched to a residence where an assault had allegedly occurred. The complainant called 911, reported that there was a party at the

residence, that she had been assaulted, and that she had run away after the assault. According to Officer Cyrus's testimony and a call log introduced into evidence, someone called 911 a few minutes later and reported that one male and one female were walking up and down the street and that the female was "screaming at the top of her lungs" and yelling "leave me alone." One of the callers also reported not having seen "any cars leave the area."

Officer Cyrus further testified that he arrived near the residence less than ten minutes after officers received the first call. Officer Cyrus testified that he "parked a few houses down and then approached on foot" as a "safety measure" because of "recent ambushes." According to the officer's testimony, he attempted to make contact with the driver of a vehicle he spotted. The officer identified Calzada-Rodriguez in court as the vehicle's driver. Officer Cyrus described the encounter as follows:

> When we arrived and attempted to make contact, he drove off and we attempted to stop him again by shining our flashlights at him and he almost hit us. That's when we—he stopped the car and we made contact with him.
>
> . . . .
>
> We were attempting to stop the vehicle by shining our lights at him and he continued driving and almost hit me and another officer.
>
> . . . .
>
> I had him open up his door. I drew my firearm, had him open up the door, got him out the car, detained him, put my firearm away and then continued the investigation.

Officer Cyrus agreed on cross-examination that all Calzada-Rodriguez would have seen from inside his vehicle were flashlights being shined at him and that this could have made

2

him fearful. Officer Cyrus also testified that he did not see Calzada-Rodriguez do anything illegal, nor was Calzada-Rodriguez parked illegally, nor was he committing any other traffic violation. In addition, Officer Cyrus agreed that none of the information he received from dispatch identified Calzada-Rodriguez as a potential suspect. Officer Cyrus testified that, after stopping the vehicle, he determined that Calzada-Rodriguez was not the assailant he sought but that Calzada-Rodriguez showed signs of DWI. The State introduced a body-cam video of the encounter, which was played during the hearing and discussed with Officer Cyrus.

At the conclusion of the hearing, the court took the motion under advisement. The court later granted the motion to suppress and issued findings of fact and conclusions of law. Among other things, the court found that:

- Dispatch did not provide Officer Cyrus with the license plate number or color of any suspect vehicle, nor did it provide any identifying information for the suspect, such as gender, clothing, or hair color or length. In addition, Officer Cyrus did not know whether any potential suspects were in a vehicle.

- As he approached Calzada-Rodriguez's vehicle, Officer Cyrus was wearing a dark uniform with no lighting mechanism on it. Morever, there were no overhead flashing lights on a police car behind Calzada-Rodriguez's vehicle.

- Officer Cyrus tried to stop Calzada-Rodriguez by shining his flashlight at him.

- Calzada-Rodriguez continued driving for a moment, and then stopped and was removed from the vehicle at gunpoint.

- Prior to Calzada-Rodriguez being ordered out of the vehicle at gunpoint, at no time did Officer Cyrus or any other officer identify himself verbally as law enforcement.

- Officer Cyrus did not observe Calzada-Rodriguez doing anything illegal as he approached, and Calzada-Rodriguez was legally parked. In addition, there

3

was nothing illegal about the way Calzada-Rodriguez began to drive off and make a turn in the cul-de-sac.

- At no time was there a police officer in front of Calzada-Rodriguez's vehicle as he drove off and made his turn.

- Calzada-Rodriguez did not almost strike any officers as he was driving away.

- Calzada-Rodriguez stopped his vehicle immediately when Officer Cyrus ordered him to do so.

The State now appeals from the trial court's order granting Calzada-Rodriguez's motion to suppress.

## APPLICABLE LAW AND STANDARD OF REVIEW

In two points of error, the State contends that the trial court abused its discretion in granting Calzada-Rodriguez's motion to suppress. According to the State, Officer Cyrus had reasonable suspicion to perform the traffic stop that led to Calzada-Rodriguez's arrest. "Reasonable suspicion to detain a person exists when a police officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (internal quotation marks omitted); *see Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("'The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime.'") (quoting *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). "We look only at those facts known to the officer at the inception of the stop—a stop or search

4

unlawful at its inception may not be validated by what it turns up." *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Hernandez v. State*, No. 03-17-00793-CR, 2018 WL 3371390, at *1 (Tex. App.—Austin July 11, 2018, no pet.) (mem. op., not designated for publication). We view the record in the "light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590, (Tex. Crim. App. 2006). Furthermore, appellate courts "use a bifurcated standard of review to evaluate whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Cortez*, 543 S.W.3d at 203. We apply this bifurcated standard by "giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). In cases involving video evidence, we "view the video in the light most favorable to the trial court's ruling," *State v. Espinoza*, No. 08-16-00087-CR, 2018 WL 6259210, at *3 (Tex. App.—El Paso Nov. 30, 2018, no pet. h.) (not designated for publication), although we review de novo "indisputable visual evidence," *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013).

**DISCUSSION**

In its first point of error, the State contends that the trial court erred in determining that Officer Cyrus lacked reasonable suspicion to stop Calzada-Rodriguez's vehicle because it was reasonable for Officer Cyrus to believe that Calzada-Rodriguez was involved in the reported assault.

We have reviewed Officer Cyrus's body-cam video of the encounter and conclude that the video supports the trial court's findings of fact described above. Specifically, the video supports the court's findings that "[a]t no time was there a police officer in front of Calzada-Rodriguez's vehicle as he drove off and made his turn" and that "Calzada-Rodriguez did not almost strike any officers as he was driving away." We further conclude, in light of the video and the trial court's findings, that it would not have been reasonable for an officer in Officer Cyrus's position to believe that Calzada-Rodriguez was driving unsafely or attempting to strike the officers with his vehicle. Therefore, in accordance with the trial court's findings of historical fact, to which we give "almost total deference," *Cuong Phu Le*, 463 S.W.3d at 876, we will not consider Officer Cyrus's testimony concerning Calzada-Rodriguez's driving as a factor supporting reasonable suspicion for the officers to initiate a traffic stop.

Excluding this testimony, the record before us indicates only that Officer Cyrus: did not know the gender of the assault suspect or any identifying features of the suspect; did not know any identifying features of the suspect's vehicle or even if the suspect was fleeing in a vehicle; did not see Calzada-Rodriguez engage in illegal activity before stopping him; was wearing a dark uniform with no lighting; made no attempt to stop Calzada-Rodriguez's vehicle other than shining a flashlight at him before stepping up to Calzada-Rodriguez's door and holding him at gunpoint; and did not identify himself as a law enforcement officer until stopping Calzada-Rodriguez at gunpoint. Viewing these facts in the light most favorable to the trial court's ruling, *see Dixon*, 206 S.W.3d at 590, we cannot conclude that the trial court erred in determining that Officer Cyrus lacked reasonable suspicion to stop Calzada-Rodriguez's vehicle.

The State emphasizes that the encounter with Calzada-Rodriguez occurred while it was dark and while Officer Cyrus was responding to an ongoing emergency. The State also points to the fact that no vehicles had been seen leaving the area after the alleged assault and that Calzada-Rodriguez was parked near the location of the alleged assault. However, these facts, given the totality of the circumstances, do not give rise to reasonable suspicion. Were we to conclude otherwise, officers might assume, as an unintended consequence of our holding, that there is always reasonable suspicion to stop a vehicle located near the scene of an alleged crime. Furthermore, the mere fact that the officers shone their flashlights at Calzada-Rodriguez does not indicate that Calzada-Rodriguez ignored a show of authority. *See Neale v. State*, 525 S.W.3d 800, 808 & n.5 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Wright v. State*, No. 03-17-00158-CR, 2018 WL 6615898, at *4 (Tex. App.—Austin Dec. 18, 2018, no pet. h.) (mem. op., not designated for publication). Indeed, Officer Cyrus himself agreed on cross-examination that all Calzada-Rodriguez would have seen from inside his vehicle were flashlights being shined at him and that this could have made him fearful.

Because we have concluded that Officer Cyrus did not have reasonable suspicion to stop Calzada-Rodriguez's vehicle on the basis of his assault investigation, we overrule the State's first point of error.

In its second point of error, the State contends that, in addition to having reasonable suspicion that Calzada-Rodriguez may have been involved in the assault, Officer Cyrus also had reasonable suspicion to stop Calzada-Rodriguez on suspicion of DWI. The State argues that reasonable suspicion of DWI existed because: Officer Cyrus knew a house party was being held nearby; Calzada-Rodriguez was parked near the house party; it is a common-sense inference that

alcohol is involved at house parties; and Officer Cyrus perceived that Calzada-Rodriguez was driving "inattentively and dangerously."

The State relies on *Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010), in which the court determined that police had reasonable suspicion to stop the defendant's vehicle when the officers observed the defendant engage in "lurching" movement and "aggressive driving" at approximately 1:30 a.m. near a bar district in Austin. However, although Officer Cyrus stopped Calzada-Rodriguez in the early-morning hours, as in *Foster*, the other factors supporting reasonable suspicion in *Foster*—the defendant's aggressive driving and the location near a bar district—are absent in this case. As discussed above, the trial court rejected Officer Cyrus's testimony that Calzada-Rodriguez almost struck the officers with his vehicle, and our own review of the video contradicts the State's contention that Officer Cyrus would have reasonably felt threatened by Calzada-Rodriguez's driving. Morever, the defendant in *Foster* was driving near a bar district, where police could reasonably expect people to be driving while intoxicated. In contrast, Calzada-Rodriguez was driving in a neighborhood. Although Officer Cyrus had reason to believe that a house party was taking place nearby, it would not be reasonable to assume that the majority of people in the area were involved in drinking alcohol, whereas this could be a reasonable inference near a bar district at 1:30 a.m. *See State v. Bernard*, 545 S.W.3d 700, 706 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that officer lacked reasonable suspicion to initiate traffic stop and distinguishing *Foster* because "there is no evidence of aggressive driving or the location of the stop being near a bar district where numerous DWI arrests had been made"); *Peters v. Texas Dep't of Pub. Safety*, 404 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that officer

lacked reasonable suspicion to initiate traffic stop and distinguishing *Foster* because the record was "silent with respect to the characteristics of the area in which Peters was observed driving—as opposed to the defendant in *Foster*, who was observed driving in an unsafe manner in the early morning hours near Sixth Street in Austin"). Since, unlike in *Foster*, Calzada-Rodriguez was not driving aggressively near a bar district but was instead driving safely in a neighborhood, Officer Cyrus's traffic stop was based merely on "inchoate and unparticularized suspicion or hunch" and not on "some minimal level of objective justification." *Foster*, 326 S.W.3d at 613 (internal quotation marks omitted).

Because we have concluded that the record does not support the State's contention that Calzada-Rodriguez's driving was a factor contributing to a finding of reasonable suspicion, and because we further conclude that the remaining factors cited by the State do not give rise to reasonable suspicion, we overrule the State's second point of error.

## CONCLUSION

We affirm the trial court's order granting Calzada-Rodriguez's motion to suppress.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed: March 5, 2019

Do Not Publish

9