

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00373-CR

Berrick Milton **BLACKWELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 23-8764
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:     H. Todd McCray, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: August 27, 2025

AFFIRMED

Appellant Berrick Milton Blackwell appeals the trial court's denial of his motion to suppress evidence obtained during a traffic stop that led to his arrest for driving while intoxicated. In three points of error, Appellant contends that the trial court erred in denying his motion to suppress because: (1) Officer Martinez lacked reasonable suspicion to conduct the initial traffic stop; (2) Officer Martinez improperly extended the detention by physically compelling Appellant to exit his vehicle based solely on his refusal to perform pre-exit tests; and (3) the field sobriety

test results should be suppressed because they were obtained through coercion. We affirm the trial court's judgment.

## BACKGROUND

On March 4, 2023, at approximately 1:43 a.m., Fredericksburg Police Department Sergeant Martinez was traveling northbound in his patrol vehicle when he encountered Appellant's pickup truck traveling toward him. The trial court found that Appellant's truck was driving across the double yellow lines of the road into the opposite lane of travel. Martinez testified that he had to maneuver his patrol vehicle to the right to avoid a collision with Appellant's truck. Martinez's dash-cam video, also depicts defendant's truck driving across the double yellow lines of the road in the opposite lane of travel.

Based on these observations, Martinez executed a traffic stop of Appellant's vehicle. During the initial contact, Martinez informed Appellant of the reason for the stop. Martinez observed that Appellant had "heavily slurred" speech, "red, bloodshot, glassy eyes," and detected "a slight odor of alcohol inside the vehicle." When Martinez asked about alcohol consumption, Appellant admitted he had "picked up his friend from Pioneer Bar" and had consumed "two Lone Star Lights."

Martinez requested that Appellant perform pre-exit tests, which he refused. Martinez then asked Appellant to step out of the vehicle for field sobriety tests. When Appellant refused and stated he could not perform the tests, Martinez reached into the vehicle, unlocked the door, and ordered Appellant to exit. Appellant exited the vehicle and eventually performed standardized field sobriety tests, exhibiting six out of six clues on the horizontal gaze nystagmus test, five out of eight clues on the walk-and-turn test, and three out of four clues on the one-leg stand test. Based on these results and his other observations, Martinez arrested Appellant for driving while intoxicated.

Appellant moved to exclude evidence obtained from the alleged unlawful detention of the defendant and suppress all statements, admissions, or confessions that were a product of compulsion or persuasion. The trial court denied Appellant's motion to suppress, finding that Martinez had reasonable suspicion to initiate the traffic stop based on Appellant's violation of driving across double yellow lines.

## STANDARD OF REVIEW

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In doing so, we "view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Moreover, the review process is bifurcated, meaning "we give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts." *Id*. "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

## DISCUSSION

Appellant presents three issues on appeal, all challenging the trial court's denial of his motion to suppress evidence obtained during the traffic stop. Appellant argues that Officer Martinez did not have reasonable suspicion to initiate a traffic stop, lacked reasonable suspicion or probable cause to extend the detention, and obtained field sobriety tests through coercion. We address each issue in turn.

**I. Reasonable Suspicion for Traffic Stop**

In his first issue, Appellant contends that the trial court erred in denying his motion to suppress because Officer Martinez lacked reasonable suspicion to conduct the traffic stop. Specifically, Appellant contends that he drove safely since two vehicles could not occupy the road at the same time, no yellow stripes were visible, and a sign directed drivers to move left. We disagree.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. "A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion." *State v. Bernard*, 545 S.W.3d 700, 704 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (referring to *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018) (quoting *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015)). "The reasonable suspicion determination is made by considering the totality of the circumstances." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Texas Transportation Code section 545.060 provides that an operator on a roadway divided into two or more clearly marked lanes for traffic shall drive as nearly as practical entirely within a single lane and may not move from the lane unless that movement can be made safely. TEX. TRANSP. CODE ANN. § 545.060(a)(1)(2). Subject to exceptions that are not present here, section 545.051(a) alternatively states "[a]n operator on a roadway of sufficient width shall drive on the right half of the roadway". TEX. TRANSP. CODE ANN. § 545.051(a). An officer's observation of a vehicle failing to drive on the right is enough to create a reasonable suspicion that a driver violated

the law. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (holding that reasonable suspicion existed when an officer observed a defendant's vehicle cross the center line on one occasion). It is unnecessary that the person detained be shown to have actually committed a traffic infringement. TEX. TRANSP. CODE ANN. § 543.001.

After reviewing State's Exhibit 1 and hearing testimony from all witnesses, the court found that: (1) defendant's motor vehicle, a truck, [was] traveling across the double yellow lines of the road in the opposite lane of travel; (2) Officer Martinez testified that he had to maneuver his patrol vehicle to the right to avoid a collision; and (3) Officer Martinez's dash-cam, depicts defendant's truck driving across the double yellow lines of the road in the opposite lane of travel.

Under our abuse of discretion standard, we must defer to the trial court's resolution of competing factual accounts. *Dixon*, 206 S.W.3d at 590. Here, the trial court's findings are supported by both officer testimony and video evidence. Martinez observed appellant driving "over the double yellow line" and that appellant's vehicle was "coming back into his lane from being over the double yellow line." Although defense witnesses testified about faded road markings and challenging road conditions, the trial court was entitled to credit the officer's testimony and video evidence over conflicting defense evidence. Thus, Officer Martinez's observation of the appellant failing to drive on the right is enough to establish reasonable suspicion for the traffic stop under section 545.051(a).

Appellant relies on *State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022), to argue that any lane departure must be proven unsafe to constitute a violation under section 545.060 (a)(1)(2). However, in *Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App.—Tyler 2012, no pet.), the court determined that "whether Appellant could safely cross the center line is irrelevant to our reasonable suspicion analysis" because section 545.051(a) "does not contain an 'unless the movement can be

made safely' exception.". Similarly, in *Texas Dept. of Public Safety v. Chang*, 994 S.W.2d 875, 878 (Tex. App.—Austin 1999, no pet.), "DPS was not required to show that Chang's crossing over the double yellow line was unsafe in order to show that Chang had committed a traffic offense.". Most directly on point, *Bracken v. State,* 282 S.W.3d 94, 98–99 (Tex. App.—Fort Worth 2009, pet. ref'd), involved similar road conditions where the officer admitted driving across the center line might be safer, yet the court held such safety considerations were "irrelevant" to the section 545.051(a) analysis..

Appellant's reliance on *Hardin* is misplaced. First, *Hardin* addressed section 545.060 exclusively and did not need to consider section 545.051(a) because there, the driver did not cross a double yellow line. *Hardin*, 664 S.W.3d at 870. Second, even applying *Hardin*'s framework requiring unsafe movement for section 545.060 violations, Officer Martinez's need to take evasive action readily satisfies that standard as he was forced to take immediate evasive action to avoid a collision, "cut[ting] to the right to avoid the accident." In *Hardin*, the vehicle's tire merely "briefly touched" the dividing line with no evidence of danger. *Id*. Here, by contrast, the officer was forced to swerve to avoid a collision, which is precisely the type of unsafe movement *Hardin* contemplated. More importantly, Texas courts have consistently ruled that crossing *a center double yellow line* violates section 545.051(a) regardless of safety considerations. (emphasis added).

Therefore, because Officer Martinez observed Appellant's vehicle cross the double yellow center line, the trial court did not abuse its discretion in determining reasonable suspicion for the traffic stop under section 545.051(a). We overrule Appellant's first point.

## II. Scope of Detention and Forced Exit

In his second point, Appellant argues that Officer Martinez lacked probable cause or reasonable suspicion to reach into his vehicle, unlock the door, and order him out based solely on his refusal to perform pre-exit tests. Appellant contends that his refusal to consent cannot justify the officer's physical intrusion or escalation of the detention to an arrest. We disagree.

### A. Scope of Detention

"A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest." *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). Once reasonable suspicion develops, an officer "may also investigate any other offense that he reasonably suspects has been committed." *Bachick v. State,* 30 S.W.3d 549, 552 (Tex. App.—Fort Worth 2000, pet. ref'd). While a defendant's refusal to consent or participate in field sobriety tests cannot alone justify detention, it may be considered as part of the totality of the circumstances in the probable cause determination. *State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.).

An officer has reasonable suspicion to further detain and investigate for a DWI when he detects a strong odor of "alcoholic beverage" and "slurred speech." *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.). Traditional indicators of intoxication include "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking-in short, any and all of the usual indicia of intoxication." *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). Time of day is also a relevant factor in determining reasonable suspicion. *Foster*, 326 S.W.3d at 613.

The record establishes that Officer Martinez developed independent reasonable suspicion of driving while intoxicated prior to Appellant's refusal to comply. In addition to Appellant's unsafe driving at 1:43 a.m., Martinez observed that Appellant had heavily slurred speech, his eyes were red, bloodshot and glassy, and there was a slight odor of alcohol inside the vehicle. Appellant also admitted to consuming alcohol on the night in question, stating he had drunk beers when he picked his friend up from a bar. Further, Martinez's own testimony confirms he was still in the investigative phase when he stated he did not yet believe Appellant was driving while intoxicated when he requested pre-exit tests.

Viewing the evidence in the light most favorable to the trial court's ruling, these observations provided Martinez with reasonable suspicion that Appellant was driving while intoxicated, justifying further investigation beyond the initial traffic stop. In *Rubeck*, the court held that odor of alcohol and slurred speech alone provided reasonable suspicion for DWI investigation. *Rubeck*, 61 S.W. 3d at 745. Here, Officer Martinez observed those same indicators, plus bloodshot eyes and admission to drinking, which satisfied the reasonable suspicion standard for extending the detention to investigate possible DWI.

Critically, Martinez developed these DWI indicators during the lawful traffic stop and before Appellant refused the pre-exit tests. Martinez testified that he asked for the pre-exit tests "due to my observations" of driving, speech, odor, and bloodshot eyes. The refusal did not create reasonable suspicion; rather, it merely prompted the officer to move to the next investigative step he was already authorized to take. So, Appellant's contention that his refusal to cooperate was the triggering fact for his investigative detention is mistaken, as Martinez already possessed reasonable suspicion for such investigation.

**B. Forced Exit**

"The Texas Court of Criminal Appeals stressed in *Davis v. State,* 947 S.W.2d 240, 244–45 (Tex. Crim. App. 1997), that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Moore v. State*, 55 S.W.3d 652, 658 (Tex. App.—San Antonio 2001, no pet.). When an officer lawfully stops a vehicle for a traffic violation, they may order the driver to exit the vehicle without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (describing the intrusion as "de minimis" and emphasizing officer safety). "Much as a 'bright-line rule' would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (explicitly rejecting the notion that physical restraint always constitutes an arrest) (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)). Rather, "officers may use such force as is reasonably necessary to effect the goal of the stop." *Id.* at 117. "Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight." *Id*. at 118.

When making an arrest, there must be some causal link between the probable cause to stop the vehicle and the subsequent probable cause to arrest the motorist for driving while intoxicated. *Texas Dep't of Public Safety v. Rodriguez*, 953 S.W.2d 362, at 364–65. (Tex. App.—Austin 1997, no pet.). Following a traffic stop, additional facts constituting probable cause to arrest the defendant for driving while intoxicated must be present. *McClain v. State*, 984 S.W.2d 700, 702–03 (Tex. App.—Texarkana 1998). "Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has

committed or is committing an offense." *Chapnick v. State*, 25 S.W.3d 875, 878 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We consider the totality of the circumstances to determine if probable cause existed. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023).

Having already developed independent reasonable suspicion for a DWI investigation, Martinez's order for Appellant to exit his vehicle was well within his investigative authority under *Mimms*. *See Mimms*, 434 U.S. at 111. Further, Appellant's argument that Martinez's physical intrusion automatically constituted an arrest fails under *Rhodes* where the court explicitly rejected bright-line rules when evaluating investigative detentions. *Rhodes*, 945 S.W.2d at 118. The critical question, then, is whether Martinez's actions were reasonably necessary to effectuate his investigation. We believe they were.

Martinez faced consistent non-compliance after Appellant twice refused pre-exit tests and then refused the lawful order to exit the vehicle. At that point, Martinez could either abandon his investigation or use minimal force to continue, as "officers may use such force as reasonably necessary to effectuate the goal of the detention, whether that be investigation, maintenance of the status quo, or officer safety." *Id*. at 117. Reaching through the window to unlock the door constituted the least intrusive means reasonably necessary under the circumstances. The intrusion was momentary and limited to facilitating Appellant's field sobriety testing. Further, Martinez did not search the vehicle, seize additional evidence, or use the intrusion to develop new suspicion. Instead, the intrusion served merely to continue an investigation already supported by prior independent observations. Thus, Martinez's brief and minimal physical intrusion to unlock Appellant's door was reasonable.

Even assuming that Martinez's physical intrusion escalated detention into an arrest as the appellant contends, such arrest was supported by probable cause under the totality of the

circumstances. *See Espinosa*, 666 S.W.3d at 667. By the time Martinez reached into the vehicle, he already observed the traditional indicators of driving while intoxicated, including an admission of drinking. Under *Chapnick*, "probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense." *Chapnick* 25 S.W.3d at 878. Here, the combination of Appellant's unsafe traffic offense, obvious indications of intoxication, admission to drinking at a bar, and the late hour provided Martinez with "reasonably trustworthy information" that Appellant was driving while intoxicated. These facts establish the required "causal link" between the reasonable suspicion to stop the vehicle and the subsequent probable cause to arrest. *See Rodriguez*, 953 S.W.2d at 364-65. Martinez had developed "additional facts beyond the initial traffic stop," as required by *McClain*. *McClain*, 984 S.W2d at 702-03. Therefore, whether Martinez's actions constituted continued investigative detention or escalation to arrest, his conduct was constitutionally justified under the circumstances at the time.

We conclude that the officer had reasonable suspicion for DWI investigation based on the traditional indicators observed during the traffic stop, and his extension of the detention by ordering Appellant to exit the vehicle was constitutionally permissible. We overrule Appellant's second point.

### III. Voluntariness of Field Sobriety Tests

In his final point, Appellant argues that Officer Martinez lacked authority to arrest him for DWI because his performance of the field sobriety tests was involuntary and coerced, rendering the arrest unlawful and requiring suppression of the field sobriety tests. We disagree.

Texas courts have consistently held that field sobriety tests constitute non-testimonial physical evidence that may be lawfully compelled from defendants. In *Gassaway v. State*, 957

S.W.2d 48, 51 (Tex. Crim. App. 1997), the Texas Court of Criminal appeals held that sobriety tests yield "physical evidence of the functioning of appellant's mental and physical faculties" and do not create an "express or implied assertion of fact or belief." Multiple courts have thereafter applied this principle to reject coercion arguments. In *Martin v. State*, 97 S.W.3d 718, 720 (Tex. App.—Waco 2003, pet. ref'd), the court held that an officer's threat of arrest for the defendant's refusal to conduct field sobriety tests was not coercive, stating "a defendant may be compelled to give physical evidence of intoxication" and that "the performance of field sobriety tests is not compulsive in violation of one's right to be free from self-incrimination when it does not make an express or implied assertion of fact." Similarly, in *Oguntope v. State*, 177 S.W.3d 435, 437 (Tex. App.—Houston [1st Dist.] 2005, no pet.), the court rejected coercion challenges, explaining that, unlike confessions, which are testimonial, "the performance of a field sobriety test is not testimonial in nature, but rather is physical evidence of a motorist's mental and physical faculties." Further, in *Arthur v. State*, 216 S.W.3d 50, 55 (Tex. App.—Fort Worth 2007, no pet.), the court confirmed this approach while noting that field sobriety tests during lawful detention constitute "the least intrusive means" to investigate DWI and represent only "minimal intrusion" into personal freedom..

Appellant's coercion arguments fail under established precedent. The *Martin* and *Oguntope* courts both approved more explicit coercive statements than Officer Martinez. In those cases, the officers threatened that the suspects would be subject to arrest or go to jail should they refuse to comply with field sobriety testing. *Martin*, 97 S.W.3d at 720; *Oguntope*, 177 S.W.3d at 436. Here, Martinez's statement that tests would "help [the appellant] go home" is arguably less coercive and therefore should also be constitutionally permissible.

Even if, as Appellant argues, physical compulsion to exit his vehicle rendered subsequent test performance involuntary, courts have consistently held that field sobriety tests may be compelled as physical evidence without constitutional violation. Having already developed reasonable suspicion for driving while intoxicated, Martinez was authorized to use reasonable force to continue his investigation when Appellant refused to comply. Unlike testimonial evidence governed by Miranda and voluntariness requirements, field sobriety tests require no warnings or consent. *Arthur*, 216 S.W.3d at 54-55 ("no Texas law requires that a suspect be warned, or that consent be obtained, before the administration of a field sobriety test").

Texas law permits enforcement to compel field sobriety tests as non-testimonial physical evidence, even through explicit threats of arrest or physical intervention. Accordingly, Martinez's actions fell well within constitutional boundaries for investigating DWI with reasonable suspicion. We overrule Appellant's final point.

## CONCLUSION

Having overruled Appellant's three points of error, we affirm the denial of his motion to suppress evidence and affirm the trial court's judgment.

H. Todd McCray, Justice

PUBLISH